No. 24-ICA-320 – *Tammy S. Wratchford and Michael W. Wratchford v. Erie Insurance Property & Casualty Company, and*

No. 24-ICA-331 – *Erie Insurance Property & Casualty Company v. Tammy S. Wratchford and Michael W. Wratchford*

**FILED**

**June 13, 2025**

ASHLEY N. DEEM, CHIEF DEPUTY CLERK
INTERMEDIATE COURT OF APPEALS
OF WEST VIRGINIA

WHITE, Judge, concurring, in part, and dissenting, in part:

I concur with the majority's decision to reverse the circuit court's decision denying the plaintiffs, Tammy and Michael Wratchford, their right to collect *Hayseeds* attorney fees. By denying the plaintiffs their attorney fees, the circuit court effectively imposed upon them the cost of compelling their insurer to honor its contractual obligation; the jury found defendant Erie Insurance Company in dereliction of its policy obligation, and the circuit court's decision likewise denied the plaintiffs "the benefit of [their] bargain." *Hayseeds, Inc. v. State Farm Fire & Cas.*, 177 W. Va. 323, 329, 352 S.E.2d 73, 80 (1986).

To recover attorney fees, the majority opinion correctly points out that "once a demand is unmet by an insurance carrier, a policyholder need only prove he or she has substantially prevailed." *Miller v. Fluharty*, 201 W. Va. 685, 698, 500 S.E.2d 310, 323 (1997). The policyholder-plaintiffs in this case made their first demand to Erie two months after the February 2017 fire, demanding a total of $341,186 for losses; four months after the fire, the plaintiffs found their home a total loss, and demanded Erie pay a total of $381,648. Erie refused both demands and never made any counteroffer. At a 2020 mediation, the plaintiffs demanded $7 million from all eleven defendants to resolve an

1

eleven-count complaint. Only one of those counts pertained to Erie's breach of its contractual duty to pay policy proceeds. Yet, at the mediation, Erie offered $150,000 to be lumped with the other defendants' settlement offers to resolve all the plaintiffs' claims against all defendants. After the plaintiffs rejected the defendants' joint offer, Erie again made no attempt to resolve the plaintiffs' claim for monies to repair their house and to replace their personal property. They gambled a jury would buy their arson theory.

At the May 2023 trial, the plaintiffs proffered an estimate to replace their house from the same contractor who examined the house in 2017. However, by that time, the COVID-19 pandemic had caused a dramatic rise in the price of materials and labor, resulting in an estimate – just to reconstruct the house – of $590,542.[1] The jury accepted that figure, found that Erie had breached the plaintiffs' policy, and awarded the plaintiffs a total of $687,742 in policy damages.

On this record, the plaintiffs substantially prevailed against Erie in recovering their policy damages. In 2017, the plaintiffs demanded $341,186 and $381,648 in policy coverage; Erie rejected these demands offered them nothing. In 2020, Erie offered a generic $150,000, but that was to settle claims not just against the policy but also tortious claims against Erie and its employees. Obviously, $381,648 in 2017, pre-pandemic dollars

---

[1] Erie's policy was a "replacement value" policy with no limit on the amount a policyholder could recover to replace their home.

is closer to $687,742 in 2023 post-pandemic dollars than anything Erie offered. To my knowledge, Erie *still* has not paid the plaintiffs their policy proceeds, eight years after the fire. Despite the jury's rejection of *Hayseeds* aggravation and inconvenience damages, the clear conclusion is that the plaintiffs substantially prevailed and are entitled to their *Hayseeds* attorney fees. They should not have been forced to hire attorneys to get the policy proceeds Erie should have willingly and promptly paid. Accordingly, I wholeheartedly concur with the majority opinion's holdings regarding *Hayseeds*.

I respectfully dissent, however, to the majority opinion's holdings regarding prejudgment interest. I question whether the holding in Syllabus Point 1 of *Miller v. WesBanco Bank, Inc.*, 245 W. Va. 363, 859 S.E.2d 306 (2021) applies to insurance policies. The plaintiffs in this case were displaced from their home in February 2017, and despite being entitled to the policy proceeds to reconstruct their home, Erie has withheld that money. The plaintiffs are out the cash money to rebuild their home, purchase new clothing, furniture, bedding, and towels, and lost the use of money they were forced to spend renting a place to live for twelve months. All of this should have been paid by Erie, but instead, the insurer has earned interest on money it refused to pay to the plaintiffs.

Insurance cases are *sui generis*; they are neither contract cases nor tort cases. Policies are heavily regulated by statutes and rules. The treatise *Couch on Insurance* notes that insurance policies are construed using principles of contract interpretation and principles for the construction of statutes. But insurance is also "sui generis, which exempts

3

insurance contracts from certain rules" (like the disposition of property after death). 2 Jordan R. Plitt, et al., *Couch on Ins.* § 21:1 (3d ed. 2025). In this case, prejudgment interest is not a contract right, it is a pecuniary loss for the plaintiffs. Prejudgment interest under West Virginia Code § 56-6-31 is awarded for out-of-pocket losses – say, for the loss of one's house, the loss of all personal possessions, or rent for temporary housing when a home is damaged by fire. Payments due under an insurance policy are to cover pecuniary, out-of-pocket losses, hence, prejudgment interest in an insurance dispute should be awarded by the circuit court under West Virginia Code § 56-6-31.

The contract prejudgment interest statute applied by the majority opinion, West Virginia Code § 56-6-27, pertains to "interest on the principal due." However, there is no "principal due" under an insurance policy. Insurance policies are not loans that accrue interest. There is no interest rate, or liquidated damage rate, specified in homeowners insurance policies upon which a jury could calculate prejudgment interest for delays in payment. Moreover, if we take the majority's opinion to its logical conclusion, if the question of prejudgment interest for an insurance company's delays in paying a first-party claim are to be decided by a jury, then the jury will need evidence upon which to base its verdict. This means plaintiffs' attorneys might be able to discover how the insurance company invests its money, and what rates of interest the company is earning by holding policyholder monies. Alternatively, if the insurance company objects to the discovery and presentation of that evidence, then I presume that the jury may award whatever interest rate that the jury deems fair; basically, the sky is the limit.

Justice Wooton pointed out in his dissent to *Miller* that the majority had misinterpreted the contract and general prejudgment interest statutes, West Virginia Code §§ 56-6-27 and -31. Justice Wooton noted that the Legislature expanded West Virginia Code § 56-6-31 to encompass "action[s] sounding in tort, contract or otherwise," yet the *Miller* majority misinterpreted that language to read that Section 31 did *not* apply to contracts. *Miller*, 245 W. Va. at 396, 859 S.E.2d at 339. I tend to agree with Justice Wooton that the Legislature's intentions have been lost in translation by the courts. Further, because the majority in this case has extended Section 27 into a new realm (insurance disputes), I believe the Legislature should examine its prejudgment interest statutes to assess their application to contracts, in general, and insurance policies, specifically.

However, given the broad language used by the SCAWV in *Miller*, I do not find fault in the circuit court's or the majority's interpretation of *Miller*. Nevertheless, because the *Miller* Court created a new rule (mandating that prejudgment interest questions on written contracts must be presented to a jury or be deemed waived), the Court remanded the case to allow the question of prejudgment interest to be presented to a jury. *Id.* at 379 n.12, 859 S.E.2d at 322 n.12. Because the majority opinion also has interpreted the contract prejudgment interest statute to apply to insurance policies for the first time, I would likewise reverse and remand this case to the circuit court for a trial to calculate an award of prejudgment interest on the policy damages awarded by the jury.

Accordingly, I respectfully dissent.